UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TERRY CLOTZ, | CASE NO. 1:23-cv-01426 |
| Plaintiff, | OPINION & ORDER [Resolving Doc. 12] |
| v. | |
| MASON COMPANIES, INC., | |
| Defendant. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this Telephone Consumer Protection Act case, Defendant Mason Companies, Inc. seeks to compel arbitration and to stay this case. Because there is no enforceable arbitration agreement, the Court **DENIES** Mason's arbitration motion.

## I.  BACKGROUND

Plaintiff Terry Clotz claims that, in July 2023, he received multiple unwanted calls from Defendant Mason Companies.[1] Plaintiff Clotz says that Mason called to collect a debt from Susan Hammond, an individual with no apparent connection to Clotz.[2] Seeking to stop the calls, Plaintiff Clotz allegedly told Mason that Mason had the wrong person during one of Mason's calls.[3] Nonetheless, Clotz continued to receive calls from Mason.[4]

In its motion to compel arbitration, Defendant Mason Companies says that it received permission to make calls to Clotz in an earlier sales transaction. According to Mason, on May 4, 2016, Clotz ordered a hose from Stoneberry.com.[5] Mason says that it owns the

---

[1] Doc. 1 at ¶¶ 11–20.
[2] *Id.* at ¶ 17.
[3] *Id.* at ¶ 18.
[4] *Id.* at ¶¶ 18–20.
[5] Doc. 13-1 at PageID #: 61.

Case No. 1:23-cv-01426
GWIN, J.

Stoneberry brand and operates Stoneberry.com, so Clotz's Stoneberry purchase was really a purchase from Mason.[6]

Defendant Mason Companies says that Clotz applied for a payment plan when Clotz purchased his hose.[7] As a result, Clotz agreed to Mason's Credit Terms governing the payment plan's financing.[8] The Credit Terms contain a communication consent clause allowing Mason to "contact you at any number . . . for the servicing, management and/or collection of your account."[9] The Credit Terms also contain an arbitration clause.[10]

However, Plaintiff Clotz never made the first payment.[11] And Defendant Mason cancelled Clotz's order by at least August 22, 2016.[12] So, Plaintiff Clotz never received his hose or any financing from Mason, and Mason never received any money from Clotz. Plaintiff Clotz never had any open account with Stoneberry or Mason, and Mason never performed "servicing, management and/or collection of [any Clotz] account."[13]

## II. LEGAL STANDARD

Both parties agree that the Federal Arbitration Act applies.[14] Under the Arbitration Act, courts considering a motion to compel arbitration engage in a limited, two-step review.[15]

---

[6] Doc. 13-1 at PageID #: 61.
[7] *Id.*
[8] *Id.*
[9] *Id.* at PageID #: 70.
[10] *Id.*
[11] *Id.* at PageID #: 61.
[12] *Id.* at PageID #: 61, 65–66.
[13] *Id.* at PageID #: 70.
[14] Doc. 13 at 7; Doc. 14 at 3 (relying on case law discussing the Federal Arbitration Act).
[15] *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citation omitted).

Case No. 1:23-cv-01426
GWIN, J.

First, the courts must decide whether there is a valid contract between the parties.[16] In deciding whether a valid contract exists, courts turn to state law.[17] Both parties agree that Ohio contract law applies here.[18]

Second, the courts must determine if the parties' dispute falls within the arbitration agreement's scope.[19] An arbitration agreement's scope can include threshold arbitrability questions.[20] And generally, there is a strong presumption in favor of finding that a dispute falls within the arbitration agreement's scope.[21] However, this presumption is limited when the contract containing the arbitration agreement has expired.

In *Litton Financial Printing Divisions, a Division of Litton Business Systems, Inc. v. NLRB*, the Supreme Court held that courts "refuse to apply [the strong arbitrability] presumption wholesale in the context of an expired [] agreement, for to do so would make limitless the contractual obligation to arbitrate."[22] When an agreement has expired, the arbitrability presumption applies only to disputes "arising under the [agreement]."[23]

The Supreme Court explained that a dispute arises under an expired agreement in three circumstances: (1) "where it involves facts and occurrences that arose before expiration"; (2) "where an action taken after expiration infringes a right that accrued or vested under the agreement"; and (3) "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement."[24]

---

[16] *Bratt*, 338 F.3d at 612 (citation omitted).
[17] *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).
[18] Doc. 13 at 8; Doc. 14 at 7.
[19] *Bratt*, 338 F.3d at 612 (citation omitted).
[20] *StockX*, 19 F.4th at 878 (citations omitted).
[21] *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).
[22] 501 U.S. 190, 209 (1991).
[23] *Id.* at 205.
[24] *Id.* at 206.

Case No. 1:23-cv-01426
GWIN, J.

Although *Litton* involved collective bargaining in the labor context, its "holdings are based upon principles applicable to arbitration agreements generally, and [its] application need not be limited to the collective bargaining context."[25] As such, the Sixth Circuit commonly applies *Litton* and its related cases when deciding arbitration motions under the Federal Arbitration Act.[26]

### III. DISCUSSION

#### A. Contract Validity

The Court finds that Defendant Mason's Credit Terms are not a valid contract due to either want of consideration or failure of consideration.

Under Ohio law, want of consideration is "a total lack of any valid consideration for the contract."[27] By contrast, failure of consideration is the "failure of one of the contracting parties to do, perform or furnish . . . the consideration in substance and in fact agreed upon."[28]

In this case, Plaintiff Clotz never received the hose that he ordered, nor did he receive any financing for that hose.[29] Likewise, Defendant Mason Companies never received any payments from Clotz.[30] In other words, no consideration ever changed hands.

This can be viewed as a want of consideration because there was a total lack of consideration exchanged between the parties. Alternately, it can be viewed as a failure of consideration by Defendant Mason because Clotz received nothing from Mason. And failure of consideration excuses Clotz from further contract performance.[31]

---

[25] *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947 (6th Cir. 2006).
[26] *See id.*; *Stevens-Bratton v. TruGreen, Inc*, 675 F. App'x 563, 567–71 (6th Cir. 2017).
[27] *LaFrance v. Ralich*, --- N.E.3d ---, 2023 WL 8234446, at *6 (Ohio Ct. App. Nov. 28, 2023) (citation omitted).
[28] *Id.* (citation omitted).
[29] Doc. 13-1 at PageID #: 61, 65–66.
[30] *Id.*
[31] *Altercare of Mayfield Vill., Inc. v. Berner*, 86 N.E.3d 649, 658 (Ohio Ct. App. 2017).

Case No. 1:23-cv-01426
GWIN, J.

Either way, the arbitration agreement in the Credit Terms is not enforceable against Plaintiff Clotz.

### B. Expired Contract

Even if the Credit Terms were enforceable at one time, they expired by at least August 22, 2016, when Defendant Mason Companies cancelled Clotz's order and closed Clotz's account.[32] The Credit Terms govern Plaintiff Clotz's account with Mason, so if that account closes, there is nothing left for the Credit Terms to govern.[33]

Therefore, the Court applies *Litton* to determine whether Plaintiff's current Telephone Consumer Protection Act case arises under the Credit Terms.

In considering this issue, the Court draws heavily from the Sixth Circuit's decision in a similar case, *Stevens-Bratton v. TruGreen Inc.*[34] Like the instant case, *Stevens-Bratton* involved Telephone Consumer Protection Act claims.[35] And also like the instant case, the defendant attempted to compel arbitration by relying on an expired contract.[36]

Applying *Litton*, the Sixth Circuit denied arbitration. First, the Sixth Circuit held that the dispute's facts did not occur before expiration because allegedly the illegal phone calls came after expiration.[37] Second, the Sixth Circuit explained that the contractual right to call a customer is not a right that accrues or vests for *Litton* purposes.[38] And finally, in the absence of a survival clause, the Sixth Circuit found that the contractual right to call did not survive expiration.[39]

---

[32] Doc. 13-1 at PageID #: 61, 65–66.
[33] The Court notes that the parties could have included a survival clause in the Credit Terms to extend some or all of the contract past expiration. But the Credit Terms do not contain a survival clause.
[34] 675 F. App'x 563 (6th Cir. 2017).
[35] *Id.* at 566.
[36] *Id.* at 566–67.
[37] *Id.* at 569.
[38] *Id.* at 569–70.
[39] *Id.* at 568, 570–71.

Case No. 1:23-cv-01426
GWIN, J.

The same reasoning applies here. Mason's calls to Clotz came after expiration.[40] While the Credit Terms give Mason a right to call during the life of the contract, the right to call does not accrue. And since the Credit Terms do not contain a survival clause,[41] the right to call does not survive expiration either.

As such, Clotz's dispute with Mason Companies does not arise under the Credit Terms, and arbitration is not appropriate.

### IV. CONCLUSION

For the reasons above, the Court **DENIES** the motion to compel arbitration. Defendant Mason Companies must answer the complaint within **fourteen (14) days** of this Order. Any Rule 12 motion is also due within **fourteen (14) days** of this Order. Filing a Rule 12 motion does not excuse Defendant from otherwise answering within this Order's deadlines.

IT IS SO ORDERED.

Dated: March 5, 2024           *s/      James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE

---

[40] Doc. 1 at ¶¶ 12–20.
[41] Doc. 13-1 at PageID #: 70.